UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| VIRGIL CAMPBELL,<br><br>                Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC,<br><br>                Defendants. | Case No.: 0:20-cv-02498<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. §1681** *et seq.* |

NOW COMES Plaintiff Virgil Campbell ("Plaintiff"), by counsel, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union LLC ("Trans Union"):

## INTRODUCTION

1.  Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 et seq. by Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.

1

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because this action arises out of violations of federal law. 28 U.S.C. §§ 1331. Jurisdiction is also proper pursuant to 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff Virgil Campbell is a natural person residing in the city of Rush City in Chisago County, Minnesota.

6. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. §1681a(c).

7. Defendant Experian is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

8. Defendant Equifax is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer reports*, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 40 Technology Parkway South #300, Norcross, Georgia 30092.

9. Defendant Trans Union is a *credit reporting agency*, as defined in 15 U.S.C. § 1681a(f)). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing *consumer report*s, as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its agent for service of process, Prentice Hall Corporation located at 801 Adlai Stevenson Dr, Springfield, IL 62703.

10. During all time pertinent to this Complaint, Defendants were authorized to conduct business in the State of Minnesota and conducted business in Minnesota on a routine and systematic basis.

11. Defendants regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Defendants regularly furnish

consumer reports to third parties for monetary compensation, fees and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency," as defined by 15 U.S.C. §1681a(f) of the FCRA.

12. During all time pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13. Any violation by Defendants was not in good faith, was knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL ALLEGATIONS

14. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

15. Defendants report consumer information about Plaintiff and other consumers through the sale of consumer reports (credit reports).

16. Defendants' credit reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has

4

accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

17. Defendants gain access to consumer information from various sources, including furnishers who provide consumer information to Defendants, and information Defendants independently source themselves or through third party providers/vendors or repositories, including computerized reporting services like PACER.

18. The information reported by Defendants contribute to consumer creditworthiness, including their FICO Scores, which are calculated using information contained in Defendants' consumer credit reports.

19. The vast majority of financial services lenders (e.g., banks, creditors, lender) rely upon credit reports, FICO Scores and other proprietary third-party algorithms – "scoring" models – to interpret the information in a credit report.

20. These algorithms use variables or "attributes" derived from the credit report to calculate a "credit score," which ultimately determines consumer creditworthiness.

21. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

22. Payment history refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late or missed.

23. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

24. In factoring the severity of delinquent payments, a FICO Score considers

how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist. However, once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

25. Defendants obtained and reported Plaintiff's consumer bankruptcy information in both the Public Records section of his consumer credit report, as well as individual account tradelines.

26. Defendants are well aware that the effect of a discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

27. Information regarding whether a debt has been reaffirmed or successfully challenged through an adversary proceeding is retrievable from the same sources Defendants obtain the bankruptcy case information, as well as from information provided to Defendants from furnishers of account/tradeline information.

28. Rather than following reasonable procedures to assure maximum possible accuracy, Defendants report information regarding pre-bankruptcy debts even if that information ignores or contradicts information provided by furnishers of account/tradeline information or information contained in public court records that Defendants have obtained through its independent efforts, or could easily obtain through reasonably available public records.

29. Defendants are on continued notice of their inadequate post-bankruptcy

reporting procedures, including inaccurate balances, and account and payment statuses, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a Chapter 7 discharge.

30. In or around December 2018, Plaintiff purchased a vehicle which was financed through Americredit/GM Financial.

31. Subsequently, Plaintiff fell on hard times and had difficulties paying his bills.

32. On or about April 13, 2020, Plaintiff filed for a voluntary bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Northern District of Minnesota (St. Paul), case number no. 20-31067.

33. Plaintiff wished to have his vehicle discharged in his bankruptcy and notified Americredit/GM Financial of his intent to surrender the vehicle in June of 2020.

34. There were no objections during Plaintiff's Chapter 7 Bankruptcy, or proceedings to declare any debt "non-dischargeable" pursuant to 11 U.S.C. § 523 et seq. There were also no requests for relief from the "automatic stay" codified at 11 U.S.C. §362 et seq. while the Plaintiff's Bankruptcy was pending to pursue the Plaintiff on any personal liability for listed debts.

35. Accordingly, Plaintiff received an Order of Discharge, discharging his personal liability on the dischargeable debts on July 14, 2020.

36. In or around August 2020, Americredit/GM Financial took the vehicle back from Plaintiff.

37. Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy,

7

Defendants Experian and Trans Union prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, filing date, and discharge status.

38. Upon information and belief, following Plaintiff's Chapter 7 Bankruptcy, Defendant Equifax prepared one or more credit reports concerning Plaintiff. Defendants reported Plaintiff's Chapter 7 Bankruptcy case information, including the case number, court, and filing date.

39. Defendants also reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, status, and the date of the last status update.

40. For accounts included in Plaintiff's Chapter 7 Bankruptcy, including collection accounts, Defendants are generally required to report the status of these debts as discharged through bankruptcy, unless the furnishers provide information showing that a debt was excludable from discharge.

41. Nevertheless, Defendants continued to report one or more accounts inaccurately, with several late payments between the time the bankruptcy petition was filed and when Plaintiff received the discharge, instead of accurately reporting the status of this pre-petition debt as included in or discharged in Chapter 7 Bankruptcy with a $0 balance.

42. Defendant Equifax also failed to report in the public record section the disposition of the bankruptcy case as discharged, and reported the bankruptcy as filed,

without indicating that Plaintiff's bankruptcy was discharged or the date thereof.

43. Experian was reporting Plaintiff's Americredit/GM Financial Account (the "Account") account no. 112018XXXXXX, and opened on or about December 18, 2020, inaccurately.

44. Experian reported the Account as Open with a Balance of $11,599 and a Monthly Payment of $552.

45. Furthermore, Experian had not updated Plaintiff's Payment History on the Account since April 2020; the same month Plaintiff filed for bankruptcy.

46. Equifax also reported the Account inaccurately.

47. Equifax was also reporting the Account with a Historical Balance of $11,599, and an Account Status of "Pays as Agreed".

48. Trans Union also reported the Account inaccurately.

49. Trans Union report the Account with a $11,599 Balance, $552 Monthly Payment, and an Overview that "[Plaintiff has] 58% left to pay on this loan."

50. Upon information and belief, Defendants had notice of Americredit/GM Financial's unreliable procedures to properly update the reporting of pre-Chapter 7 debt upon discharge of a bankruptcy, in addition to the information Defendants already knew that rendered its reporting inaccurate.

51. Defendants are inaccurately reporting that Plaintiff owes money on the discharged Account, and also report inaccurate statuses of this Account, thereby damaging his credit utilization.

52. Defendants inaccurately reported the status of these debts, even though the

debts are in fact discharged, Plaintiff is no longer personally liable for the debts, and Defendants have actual knowledge Plaintiff filed for and received a Chapter 7 Bankruptcy discharge.

53. Consequently, Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm.  Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

54. Upon information and belief, Plaintiff applied for an auto loan with First Premier Bank and was approved at less favorable terms due to the inaccurate information Defendants' published to First Premier Bank in its review of Plaintiff's credit report.

55. Upon information and belief, Plaintiff applied for a credit card with Citi, Credit One, and Capital One, and was denied due to the inaccurate information Defendants' published to Citi Credit One, and Capital One, in their review of Plaintiff's credit report.

## COUNT I
## Violations of the FCRA, 15 U.S.C. § 1681e(b)

56. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

57. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the

public confidence, which is essential to the continual functioning of the banking system.

58. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

59. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

60. The FCRA requires consumer reporting agencies like Defendants to follow reasonable procedures to assure maximum possible accuracy of consumer information.

61. Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of information pertaining to discharged debts that arose prior to and were included in the consumer's bankruptcy. Defendants also report inaccurate information when that information is contradicted by information known by Defendants, reported to Defendants, or reasonably available to Defendants.

62. Consequently, Defendants routinely report inaccurate, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendants possess information inconsistent with the reported information, and possess information establishing that the reported information is in fact inaccurate.

63. Defendants possesses information from which they know the reported information is inaccurate, as Defendants includes the date the consumer filed bankruptcy,

know whether the consumer obtained a bankruptcy discharge from their own affirmative efforts to procure this information or from tradeline furnishers, and also know the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

64. Defendants knew or should have known of their obligations under the FCRA, especially pertaining to discharged debts. These obligations are well established by the plain language of the FCRA, in promulgations of the Federal Trade Commission, well-established case law, and in prior cases involving Defendants from which Defendants are on notice of their unreasonable procedures.

65. Defendants have obtained or has available substantial written materials that apprised Defendants of duties and obligations mandated by the FCRA, including where consumers file for Chapter 7 Bankruptcy.

66. Defendants are well aware that the effect of a discharge Order in a no asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

67. Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the credit reports it sells to other parties.

68. Defendants voluntarily conducted public records searches and obtained information about Plaintiff's bankruptcy filing and bankruptcy discharge to report this information in their consumer credit reports.

69. The diligence Defendants exercise in recording consumer bankruptcy filings is not replicated in Defendants' reporting of the effect of the bankruptcy upon consumer debts, including the bankruptcy discharge.

70. Despite knowledge of their legal obligations, Defendants acted willfully in consciously breaching known duties and deprived Plaintiff of her rights under the FCRA.

71. Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure.

72. Defendants possess information from which Defendants should know the reported information is inaccurate, as Defendants include the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

73. Defendants are also on notice from other account tradelines reported by Defendants that indicate those accounts were included in/discharged in bankruptcy.

74. In this case, the inaccurately reported debts pertain to Americredit/GM Financial debts that Defendants knew are several months old, and which predated Plaintiff's Chapter 7 Bankruptcy.

75. Alternatively, Defendants were negligent, entitling Plaintiff to recover damages pursuant to 15 U.S.C. § 1681o.

76. Defendants' inaccurate and negative reporting damaged Plaintiff's creditworthiness, as Defendants report the existence of a large debt after the filing of the petition on accounts that were included in Plaintiff's Chapter 7 bankruptcy.

77. Defendants are a direct and proximate cause, as well as a substantial factor

in causing actual damages and harm to Plaintiff, including, but not limited to, credit denials, embarrassment, anguish, and emotional and mental pain. Consequently. Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 et seq.

78.   Plaintiff suffers damages, including credit harm, loss of credit opportunity, credit denials, and other financial harm. Plaintiff also suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Virgil Campbell respectfully requests judgment be entered against Defendants for the following:

A.   Declaratory judgment that Defendant violated the FCRA;

B.   Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C.   Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D.   Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.   Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.   Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G.   Any other relief that this Court deems appropriate.

## **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 8th day of December 2020

> By: *s/Jenna Dakroub*
> Jenna Dakroub
> Bar Number: 0401650
> *Attorney for Plaintiff, Virgil Campbell*
> **Price Law Group, APC**
> 8245 N. 85th Way
> Scottsdale, AZ 85258
> Telephone: (818) 600-5513
> Fax: (818) 600-5413
> E: jenna@pricelawgroup.com