```
UNITED STATES DISTRICT COURT
   DISTRICT OF MINNESOTA
 CIVIL NO. 20-2498(DSD/BRT)
```

Virgil Campbell,

       Plaintiff,

v.                                              **ORDER**

Experian Information
Solutions, Inc., Equifax
Information Services, LLC, and
Trans Union LLC,

       Defendants.

    David A. Chami, Esq. and Price Law Group, APC, 8245 North 85th Way, Scottsdale, AZ 85258, counsel for plaintiff.

    Eric A. Nicholson, Esq. and Jones Day – Detroit, 150 West Jefferson Avenue, Suite 2100, Detroit, MI 48226, counsel for defendant Experian Information Solutions, Inc.

This matter is before the court upon defendant Experian Information Solutions, Inc.'s motions for summary judgment and to exclude the testimony of plaintiff Virgil Campbell's expert witness. Based on a review of the file, record, and proceedings herein, and for the following reasons, the motion for summary judgment is granted and the motion to exclude expert testimony is denied as moot.

**BACKGROUND**

This Fair Credit Reporting Act (FCRA) dispute arises out of allegedly inaccurate information on Campbell's credit report

following his discharge from bankruptcy.  Campbell filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota in April 2020.  Am. Compl. ¶ 31.  This petition was the second time Campbell had filed for bankruptcy protection under Chapter 7.  Campbell Dep. at 99:12-15.  Campbell obtained a discharge on July 14, 2020.  Nicholson Decl. Ex. F.

In July 2020, shortly after his bankruptcy discharge, Campbell requested a credit report from an online service called Credit Karma, which accesses reports from former defendants Trans Union LLC and Equifax Information Services, LLC.  Campbell Dep. at 39:4-15.  These reports contained information about a lease for Campbell's pickup truck that had been discharged in his bankruptcy.  Id. at 39:13-15, 69:9-70:24.  The reports indicated that the lease was still outstanding, with a balance of almost $12,000, but did not state that Campbell was in default or otherwise not paying this obligation.  E.g., id. at 72:12-18.

On September 21, 2020, Campbell (or someone acting on Campbell's behalf)[1] requested a credit report from defendant Experian.  This report showed the lease as "open" and "never late" with a balance of nearly $12,000 as of March 2020.  Nicholson Decl.

---

[1] Campbell denied personally requesting his credit report from Experian in September 2021 or even seeing an Experian report before he filed this lawsuit.  Campbell Dep. 53:3-24, 57:4-25.  His declaration submitted in conjunction with this motion, however, states that, in September 2020, "I was able to check my Experian credit report."  Campbell Decl. ¶ 13.

Ex. H.  There seems to be no dispute that the discharge order did not specifically mention the truck lease, either as discharged or assumed.  Id. Ex. D.  There is also no dispute that debts such as truck leases are not necessarily automatically discharged, as the Bankruptcy Code allows consumers to reaffirm debts such as these so that the consumer can retain the property.  11 U.S.C. § 365(p).

Campbell did not notify any of the credit reporting agencies that there was inaccurate information on his credit reports, as the reports they issue instruct.  Campbell Dep. at 61:15-62:25.  Rather, he spoke with his bankruptcy attorney, who referred him to his current litigation counsel.  Id. at 41:3-6.  Less than three months after first requesting his credit report from Experian, and without ever having disputed the inaccurate information in his credit reports, Campbell filed this lawsuit against the three credit-reporting agencies.  His complaint asserts that the agencies negligently and willfully violated the FCRA by reporting that his truck lease was still outstanding after his bankruptcy.  Trans Union and Equifax subsequently agreed to settle Campbell's claims against them; only Experian remains.

Campbell alleges that he has suffered damages in the form of loss of credit opportunities, including credit denials; unspecified "credit harm" and "other financial harm."  Am. Compl. ¶ 49.  His pleadings contend that he was denied credit on several occasions in the fall of 2020 or was approved for credit at less-

3

favorable terms, ostensibly because of the incorrect credit reports. Id. ¶¶ 50-51.

Campbell also alleges that he suffers emotional-distress damages in the form of "interference with daily activities," "emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety." Id. ¶ 49. In support of these claimed damages, Campbell states that he has suffered "extreme distress, anxiety, frustration, and depression" and that his personal relationships have become strained. Campbell Decl. ¶¶ 8-9.

Experian initially moved to dismiss, arguing that that Campbell did not adequately allege that it failed to follow reasonable procedures in reporting on his credit status. Experian also asserted that the class action settlement in White v. Experian Information Solutions, Inc., No. SA CV 05-1070, 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008), precluded Campbell's claim under the doctrine of collateral estoppel. The court denied the motion, determining that Campbell had plausibly alleged that Experian "violated the FCRA by inaccurately reporting the [truck lease] as open and carrying a balance despite knowing that Campbell's debts were discharged in bankruptcy." ECF No. 52, at 5. The court also concluded that the White settlement did not preclude Campbell's claim. Id. at 5 n.2. Experian now moves for summary judgment and to exclude Campbell's expert witness.

**DISCUSSION**

**I.   Standard of Review**

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

The court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party must set forth specific facts sufficient to raise a genuine issue for trial; that is, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see Anderson, 477 U.S. at 249B50; Celotex v. Catrett, 477 U.S. 317, 324 (1986). Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

## II. Actual Damages

The FCRA outlines the procedural and substantive requirements meant to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008) (quoting Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007)). Section 1681e(b) requires consumer reporting agencies like Experian to "follow reasonable procedures to assure maximum possible accuracy of the information" contained in a consumer's credit report. 15 U.S.C. § 1681e(b).

To survive Experian's motion for summary judgment, Campbell must present evidence that: (1) Experian negligently or willfully failed to follow reasonable procedures intended to assure the accuracy of its report; (2) Experian reported inaccurate credit information about Campbell; (3) Campbell suffered harm; and (4) Experian's failure to follow reasonable procedures was the cause of that harm. Reed v. Experian Info. Sols., Inc., 321 F. Supp. 2d 1109, 1113 (D. Minn. 2004).

The issue of damages is dispositive here. See Peterson v. Experian Info. Sols., No. 21-2863, --- F.4th ---, 2022 WL 3365130, at *1 (8th Cir. Aug. 16, 2022) ("To maintain a claim for negligent violation of the FCRA, a plaintiff must offer proof of 'actual damages sustained by the consumer as a result of the failure.'") (quoting 15 U.S.C. § 1681o(a)(1)); see also Ojogwu v. Rodenburg

6

Law Firm, 26 F.4th 457, 461 (8th Cir. 2022) (The "first and foremost" requirement for Article III standing "is injury in fact, which requires the plaintiff to show that the harm is both concrete and particularized.") (quotations omitted).

Campbell alleges that he has sustained actual damages due to Experian's alleged misconduct because he was denied a Chase credit card and has suffered "severe emotional distress." The record does not bear out these allegations.

**A.   Credit Denials**

Although Campbell pleaded that he had been denied credit on several occasions, discovery has revealed that only one new creditor, Credit One, sought information from Experian, after Campbell sought pre-approval for a credit card in early November 2020. Experian did not furnish Campbell's credit report to Credit One, however; Experian provided only Campbell's credit score, a number which does not reference any of Campbell's debt history. Maynard Dep. 19:11-20:3. In addition, one of Campbell's existing creditors made an account inquiry with Experian during the relevant time period, but Experian also did not provide that creditor with a copy of Campbell's credit report, and there is no indication that Campbell was refused credit or otherwise harmed by this existing creditor's inquiry. Hottenstein Dep. at 15:4-20. None of the other credit inquiries initiated between September and December 2020 were provided with Campbell's credit report, and

7

thus no creditor received inaccurate information regarding Campbell's truck lease. Simmons Decl. ¶¶ 7-9.

Campbell has submitted no documentary or other corroborating evidence showing that Credit One denied him credit because of the inaccurate Experian report. See Richardson v. Fleet Bank of Mass., 190 F. Supp. 2d 81, 88 (D. Mass. 2001) (requiring showing that erroneous report was a "substantial factor" in the denial of credit). Indeed, the Credit One representative testified that it based its decision to deny him credit on Campbell's recent bankruptcy, his lack of credit history, how recently he opened accounts, and the fact that few of his credit-card accounts had high credit limits, not on any inaccurately reported information from Experian. Maynard Dep. at 20:5-21:10. Because Campbell has not tied the Experian report to Credit One's (or any other creditor's) decision to deny him credit, the court cannot conclude that he suffered actual damages in this way. And "[t]o the extent [Campbell] alleges injury solely from diminution in [his] credit score, that type of abstract harm does not support actual damages." Peterson, 2022 WL 3365130, at *2.

**B.   Emotional Distress**

Campbell's claim of emotional distress similarly lacks evidentiary support. Emotional distress "must be supported by evidence of a genuine injury, such as evidence of the injured party's conduct and the observations of others." Cousin v. Trans

8

Union, 246 F.3d 359, 371 (5th Cir. 2001) (citing Carey v. Piphus, 435 U.S. 247 (1978)).  In other words, such claims "must be supported by competent evidence of genuine injury." Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999) (citation and internal quotation marks omitted).

Campbell testified that he felt "stressed out and had a hard time sleeping" after first seeing his post-bankruptcy credit report in July 2020.  Campbell Dep. at 40:4-9.  He also felt embarrassed by the inaccurate information.  Id. at 92:4-19.  He testified that he "was pacing back and forth and had to sit for quite a while to collect myself" on the day he first accessed his post-bankruptcy credit report and "probably three days afterwards."  Id. at 87:10-17.  Campbell described expressing his embarrassment, anger, and frustration with friends and co-workers in the days after he first accessed his credit report in July 2020. Id. at 92:20-25, 94:3-97:15.  Campbell notably did not testify that he suffered any further distress after receiving his credit report from Experian.

Ultimately, Campbell testified that he was frustrated that Experian did not settle this lawsuit as Trans Union and Equifax did, because he felt "like I should get something for all of the stuff I went through . . . [t]he embarrassment, the stress, the

anger, just being humiliated.  Just thinking my credit was going to get better fast and it took forever."[2]  Id. at 103:24-04:8.

Campbell did not seek any medical or clinical help for his emotional distress.  Id. at 86:18-21.  He did not see a therapist, psychologist, psychiatrist, or spiritual advisor to discuss his emotional distress.  Id. at 86:22-87:3.  Other than the difficulty sleeping for the first few nights after seeing his credit report in July 2020, Campbell did not describe any other physical symptoms of his alleged emotional distress.[3]

Campbell attempts to bolster his own vague testimony regarding his alleged emotional distress with that of other individuals, but a close examination of their observations shows that it was this lawsuit, and specifically Experian's refusal to settle Campbell's claims as the other agencies did, that led to much of the distress Campbell's friends and associates described.

---

[2] There is no dispute that neither Campbell nor his attorneys contacted Experian regarding the incorrect information in Campbell's credit report until this lawsuit was filed on December 8, 2020.  Experian had corrected Campbell's credit report to reflect that the lease was discharged in bankruptcy by December 23, 2020.  Nicholson Decl. Ex. A at 74-75.

[3] Campbell submitted a declaration in conjunction with this motion that purports to describe additional physical symptoms such as intermittent sleep loss and loss of appetite for weeks after viewing his credit report.  But this declaration "directly contradict[s]" his deposition testimony, which described his only physical symptom as loss of sleep for, at most, three days after he first accessed his credit reports in July 2020.  City of St. Joseph v. Sw. Bell. Tel., 439 F.3d 468, 475 (8th Cir. 2006).  The declaration is thus "insufficient to create a genuine issue of material fact under Rule 56."  Id.

10

His co-worker, Mark Rogde, testified in September 2021 that "within the last month or so, [Campbell] hasn't – he hasn't been acting normally. He has been acting stressed out." Rogde Dep. at 9:3-15. Before that time, however, including during Campbell's bankruptcy, Rogde testified that he had not noticed Campbell being stressed out. See id. at 12:11-18 ((Q: "And prior to . . . the past month . . . have there been any other instances . . . since January of 2019, when you've noticed Mr. Campbell seeming more stressed than usual?" A: "No not at all. He's been really normal."). Rogde blamed the pending lawsuit, not Campbell's bankruptcy or the inaccurate credit reports for Campbell's stress. See id. at 26:22-24 ("Definitely this whole lawsuit with Experian. . . . [H]e thought it was going to go smooth . . . .").

Campbell's roommate, Dave Holm, testified that Campbell was upset after he viewed his credit report on his phone. Holm Dep. at 12:10-21. Holm did not recall when this occurred, however, and whether the offending credit report was Experian's or the report of the other agencies. Given the two-month lag between Campbell's accessing his Trans Union and Equifax reports and his Experian report, the lack of timeframe for Holm's observations is significant. Holm also testified that he observed that Campbell was upset by Experian's failure to settle this lawsuit. See id. at 17:11-15 (Campbell told Holm that "he was angry about it and he thinks it's a bunch of BS and [Experian] should settle with him.").

11

And though he testified that Campbell was embarrassed, at least some of that embarrassment was because Holm and another acquaintance were required to give depositions in this lawsuit. Id. at 20:2-7.

Another co-worker, Gayle Stream, testified that, although Campbell seemed "a little upset" when he discovered that his truck lease was on his post-bankruptcy credit reports, Stream Dep. at 21:9-17, she observed that Campbell was "a bit stressed out" and "not himself" because this lawsuit had "kind of drawn out a little and [Campbell was] kind of surprised that we've gotten to this point." Id. at 8:6-23. Specifically, she stated that Campbell seemed to find it "a little stressful" because "the other two [agencies] had resolved their issues . . . and now this one has went [sic] this far." Id. Ms. Stream attributed some of Campbell's stress to "a privacy deal" because she was at their shared worksite, giving a Zoom deposition in the lawsuit. Id. at 9:7-16.

Campbell "suffered no physical injury, [he] was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress" that was tied in any way to his Experian credit report. Peterson, 2022 WL 3365130, at *3. "In these circumstances, a reasonable jury would not award emotional distress damages." Id. Campbell has not shown that he has suffered any

actual damages that were caused by Experian's alleged misconduct and summary judgment is therefore warranted.

**III. Statutory and Punitive Damages**

Campbell claims that he is also entitled to statutory and punitive damages because Experian willfully violated the FCRA. Campbell specifically asserts that Experian willfully failed to employ reasonable procedures because it knew that his truck lease was discharged in bankruptcy but failed to update its report to remove that lease from his report. Again, there is no dispute that the bankruptcy discharge does not mention the lease as either discharged or reaffirmed; to discover whether Campbell had reaffirmed the lease, Experian would have been required to make additional inquiry, either by delving into the bankruptcy record or requesting more information from the creditor.

The FCRA permits aggrieved consumers to seek statutory and punitive damages against "[a]ny person who willfully fails to comply" with its provisions. 15 U.S.C. § 1681n(a)(1)(A)&(B). For a violation of the FCRA to be "willful," Experian must either have knowingly or recklessly violated the law. Burr, 551 U.S. at 57. A defendant does not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69.

13

A credit reporting agency willfully fails to comply when it "knowingly and intentionally commit[s] an act in conscious disregard for the rights of others." Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993) (quoting Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986)). Courts have generally found willful violations in cases where agencies have intentionally misled consumers or concealed information from them. Cousin, 246 F.3d at 372. That is not the case here.

At most, Campbell's allegations establish that Experian negligently included inaccurate information on his credit report. Even if taken as true, the allegations do not support a finding that Experian knowingly and intentionally disregarded Campbell's rights. Indeed, although the court does not reach the broader issue of whether White fully precludes Campbell's claim, Experian's reliance on the procedures approved in White establishes that Experian's reporting was not willful or reckless.

Because Campbell has presented no evidence that Experian acted with a conscious disregard of his rights, he is not entitled to statutory or punitive damages under 15 U.S.C. § 1681n.

Campbell has failed to present sufficient evidence that he suffered actual harm entitling him to damages. As a result, his claim fails as a matter of law and summary judgment in favor of Experian is warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERERD** that:

1. The motion for summary judgment [ECF No. 189] is granted;

2. The motion to exclude expert witness [ECF No. 197] is denied as moot; and

3. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 29, 2022

                                      s/David S. Doty
                                      David S. Doty, Judge
                                      United States District Court